Sedgwick, Ch. J.
[Dissenting.] I agree with Judge Truax in all matters discussed by him, excepting that I am of opinion that there was ho evidence that there was any negligence of defendants in respect to the elevator or chain (De Graff v. N. Y. C. & H. R. R. R. Co., 76 N. Y. 126).
The defendants had incontrovertibly proved that they *352 had used due diligence in procuring a skilled man to construct the elevator. The only piece of evidence that is referred to, to show that the defendants had notice that there was a defect, in fact, is a declaration of an engineer who was to, and afterwards did, run the elevator. He said “ that chain is too light for the work of this house.” It is said that this shows knowledge on his part, that the chain, was too light, if such were the fact, and that as he was defendant’s agent, the knowledge is imputed to the defendants. This declaration shows no knowledge as to a defect in the chain, although it may show that he had an opinion, from the appearance of the chain, that it was too light for the work of the house. Assume that the defendants are intended to have the opinion that their agent is supposed to have,—or indeed that they had, of themselves, such an opinion,—what proof is there that they did not do what was required by the law to be done, in consequence of its existence ? There is no proof that they did not do all that could be done. ¡N o negligence is to be presumed. They, as the proof incontrovertibly shows, procured a man of special experience and^skill, and made such communication to him that he used this chain, and he testifies that each chain would lift 3,000 pounds ; that is, that the four chains would support four times the weight which was expected to be carried upon the elevator. Such was his opinion, as against the opinion of Bond. It seems to me, it does not tend to show negligence, if the defendants relied upon the judgment of the maker of the elevator rather than upon their own or Bond’s judgment.
The evidence does not present to me any proof that the chain was, in fact, what Bond said he thought it was, that is, too light for the work of the house. It cannot be that the work of the house, as thus used, means the first load or the loads of eight days. It means the work for an indefinitely long time. It in reality implies that it may be sufficient for some time, or a short time, but not for a long time. And the fact that it broke when it did, indicates that the *353 breaking was nob due to what appeared to Bond to be a deficiency.
But the evidence shows that Bond was not defendant’s agent in respect to matters connected with the elevator, at the time he made the remark. The evidence clearly shows that he had nothing to do with the elevator at that time. Mr. Hilton had the affair in his own charge entirely. He had interviews with the maker, had given the instructions, had made the contract, had not called on Bond for any service, and had not put him in charge of the elevator. The elevator had run eight days when the accident happened on September 8. The conversation was in the latter part of August, and before it was started and run. As Bond had no service in connection with the making of the elevator, or in its running, he was not such an agent of the defendants that a remark he made constitutes notice to the defendants, or implies knowledge on their part.
I think that the judgment should be affirmed, with costs.
Before Sedgwick, Ch. J., Truax and O’Gorman, JJ.
Decided May 5, 1884.
Re-argument of appeal. The former appeal was heard in January, and was decided in June, 1883.
Clifford A. H. Bartlett, for appellant.
Horace Russell, for respondents.
By the Court.—Truax, J.
The respondents contend on this re-argument, that “ the chain broke, not because it was not strong enough for the use for which it was intended, but because of improper use by the plaintiff, or some other person, without the knowledge of the defendants.” This point was considered on the former appeal. We then came to the conclusion that the evidence would warrant the jury in finding that the chain broke because it *354 was too light for its work, and not because the elevator had been improperly loaded or used. We see no reason to change the conclusion that we then came to.
The respondents also contend that they are not liable, ‘ ‘ because they did not build the elevator themselves, but purchased it and its appliances of independent contractors of skill and repute.” Undoubtedly the defendants had the right to rely to some extent upon the judgment and skill of the manufacturers from whom they bought the elevator. That it was purchased from a firm skilled in the manufacture of elevators was a fact that tended to excuse the defendants, but it was not of itself a conclusive justification, under the circumstances disclosed on the trial. We did not hold that the defendants were negligent in purchasing the elevator. We held that, whether they were or were not negligent in using the elevator after they had received notice that it “was too light for the work of the house,” was a question of fact that should have been submitted to the jury. This notice we then considered, and now consider, sufficient to put a prudent man upon his guard. Up was as particular as the notice in Kain v. Smith (89 N. Y. 375), that “ the old jigger was played out,” which the court of appeals said was direct notice that “ a new jigger was needed.” In Ford v. Fitchburg R. Co. (110 Mass. 240), the defendant was notified “ that the engine was nota proper one to run the train with ;” and in Huddleston v. Lowell Machine Co. (106 Id. 282), the defendant was notified “ that the floor was decayed, and ought to be seen to and fixed,” and it was held that these notices were sufficient to put the defendants on their guard.
This case is to be distinguished from Malone v. Hathaway (64 N. Y. 5), and Devlin v. Smith (89 Id. 470), because in those cases there.was no evidence that the defendants knew, or ought to have known, of any defect in the posts that held the wash-tub, or in the scaffold.
The defendants also contend that Bond’s negligence was not their negligence. The evidence shows that Bond was *355 the “head engineer,” that “ he had entire charge of all the machinery,” and that “there was not a steam pipe or boiler or any machinery in the house he lmd not charge of.” What is the meaning of the word “charge f ’ Smith in his work on synonyms says that it “denotes delegated care under circumstances of responsibility.” It means that the defendants delegated to Bond the exercise of that care to the plaintiff that the law imposed upon them. This, evidently, is the understanding that Mr. Denning had of Bond’s duties, for he testified that the whole building was in his (Denning’s) charge, but that he had no power or responsibility whatever in reference to the construction of the building, and then added, “Mr. Bond, the chief engineer, had charge of the machinery in the building,” thus placing his lack of power and responsibility in reference to the construction of the building in opposition to Bond’s charge of the machinery. Judge Hilton sought to contradict this evidence by saying that the construction of buildings and the supply of necessary apparatus came under his charge. If by this statement lie meant to say that he retained the general control and supervision of the machinery, then it raised a question of fact that should have been submitted to the jury. If, said the court of appeals in Malone v, Hathaway, “if it was claimed that the defendants had transferred the charge and direction of any branch of the busines and their duties upon him” (a servant) “ it would have been a proper question for the jury.”
In Corcoran v. Halbrook (59 N. Y. 517), the agent, for whose negligence the defendants were liable had “ general charge of the mill and machinery.”
We are of the opinion that the words “ Bond had entire charge of the machinery ” mean that the defendants had delegated to Bond the duty of repairing defective machinery or of putting new machinery in its place, a duty that the defendants owed to the plaintiff, and that therefore, notice to Bond was notice to the defendants.
The judgment and order appealed from are reversed and *356 a new trial is ordered with costs of this argument to plaintiff.
O’Gorman, J., concurred.